**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

ALFONZO BROWN                                  )
3612 Dory Brooks Road                          )
Chesapeake Beach, Maryland 20732,              )
                                               )    Civil Action No.: _____
On behalf of himself and                       )
all others similarly situated,                 )
                                               )
            *Plaintiffs*,                       )
                                               )
v.                                             )    **CLASS ACTION & COLLECTIVE**
                                               )    **ACTION COMPLAINT &**
                                               )    **DEMAND FOR TRIAL BY JURY**
BRAWNER BUILDERS, INC.                         )
11011 McCormick Road, Suite 300                )
Hunt Valley, Maryland 21031,                   )
                                               )
Serve on:                                      )
R/A Jeffrey A. Bird                            )
11011 McCormick Road, Suite 300                )
Hunt Valley, Maryland 21031,                   )
                                               )
            *Defendant*.                        )
_____ )

## COMPLAINT

Plaintiff, ALFONZO BROWN (hereinafter "Plaintiff" or "Brown"), on behalf of himself

and all others similarly situated, by and through his undersigned attorney Scott A. Conwell, Esq.

and Conwell Law LLC, hereby submits this Class Action and Collective Action Complaint for

declaratory and injunctive and other appropriate equitable relief, compensatory, statutory and

punitive damages, attorneys' fees and costs against the Defendant, BRAWNER BUILDERS,

INC. (hereinafter "Defendant" or "Brawner"), for Unlawful Discrimination based upon race

under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, et seq.), Maryland's laws

prohibiting discrimination in employment, Md. Code Ann., State Government § 20-601, *et seq.*;

for unlawful discrimination under the Rehabilitation Act of 1973, 29 U.S.C. § 794, for

retaliation, for denial of due process under the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. §1983, and for denial of procedural and substantive due process under the Maryland Constitution's Maryland Declaration of Rights (Article 24); for unpaid wages and the unlawful compensation policies and practices constituting willful, knowing, and intentional violations of the federal Fair Labor Standards Act, 29 U.S.C. §§201, *et seq.* ("FLSA"), the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. §§3-401, *et seq.* ("MWHL") and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. §§3-501*, et seq.* ("MWPCL"), and the Plaintiff further states:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over the federal claims asserted herein pursuant to 28 U.S.C. §§ 1331, 1337, 1343, for civil actions arising under the laws of the United States of America; Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(l) and (3), and (g) (referred to as "Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a (additional compensatory and punitive damages for unlawful intentional discrimination; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; under the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. §1983; and under 29 U.S.C. §216(b).

2. Pendent jurisdiction lies in this Court for state claims so closely connected to the federal claims that their interrelationship permits the conclusion that the entire action before the court comprises but one case. Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over all state claims alleged herein because those claims contain a common nucleus of operative facts and the Plaintiff would ordinarily be expected to try them all in one proceeding.

3.  State claims are authorized for: unlawful employment practices under Md. Code Ann., State Government § 20-1013(b).

4.  This Court has personal jurisdiction over the parties because the Defendant is a Maryland business, and also the acts, events and/or omissions giving rise to Plaintiff's claims as described herein occurred in the State of Maryland, and the Plaintiff resides in the State of Maryland.

5.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant has its principal place of business in this district, the acts, events and/or omissions giving rise to Plaintiff's claims as described herein occurred in this district, and the Plaintiff resides in this district.  Venue is proper in this district for the state law claims as it covers the county where the unlawful employment practices occurred. Md. Code Ann., State Government § 20-1013(b).

## PARTIES

6.  Plaintiff Alphonzo Brown ("Plaintiff" or "Brown"), date of birth October 7, 1976, currently resides at 3612 Dory Brooks Road, Chesapeake Beach, Maryland 20732.  At all relevant times, Plaintiff was employed on an hourly basis by Defendant, and was assigned to work at various locations within the State of Maryland as described herein.

7.  Defendant Brawner Builders, Inc. ("Defendant" or "Brawner"), has a principal office at 11011 McCormick Road, Suite 300, Hunt Valley, Maryland 21031, and has a resident agent, Jeffrey A. Bird, located at the same address.

8.  Brawner employs more than 50 employees.

9.  Respondeat Superior/Acts of Agents: Wherever in this complaint it is alleged that any individual or other party did or failed to do any particular act and/or omission, it is meant that

Defendant(s), acting individually, or by and through its agents, officers, directors, servants, and employees, either did or failed to do that particular act and/or omission, in the course and scope of his/her/its employment, agency, or contract with Defendant(s), and in the furtherance of Defendants' businesses.  It is further alleged that any individual Defendant(s) named herein were an agent acting in the course and scope of his/her/its agency during the transaction(s) that is/are the subject of this case with the actual and apparent authority of his/her/its principal.  It is further alleged that the individual's acts and omissions were ratified and adopted by the Defendant(s).

**Administrative Status and Injunctive and Equitable Relief**:

10. Plaintiff Brown timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission (the "EEOC"), alleging that he was discriminated against on the basis of race and color, and was retaliated against.

11. Plaintiff was issued a right to sue letter with a mail date of August 17, 2014.

12. Plaintiff Brown is entitled to bring his discrimination suit under Maryland state law because it is within ninety (90) days of the receipt of the right to sue and notice of suit rights letter.

13. A district court has jurisdiction over non-filed class members as well as those who have not or cannot file timely administrative charges and/or have not exhausted their administrative remedies.  *Zipes v. Trans World Airlines, Inc. Independent Federation of Flight Attendants v. Trans World Airlines, Inc.*, 455 U.S. 385, 397, 399 (1982); *Aronberg v. Walters*, 755 F.2d 1114, 1116 (4th Cir. 1985).

14. A preliminary injunction, reinstatement and other appropriate equitable relief is specifically authorized under Maryland law.  Md. Code Ann., State Government § 20-1013(d); § 20-1009(b).

15. It is the policy of the State of Maryland to ensure equal opportunity and prohibit discrimination on the basis of disability.   Md. Code Ann., State Government § 20-602 (2010).  Unlawful employment practices include the terms, conditions, and privileges of employment.  Md. Code Ann., State Government § 20-606.  Maryland's antidiscrimination laws are interpreted far broader and provide more extensive relief than their federal counterparts.  *Haas v. Lockheed Martin*, 396 Md. 469, 914 A.2d 735, 750 (2007); *Molesworth v. Brandon*, 341 Md. 621, 628, 672 A.2d 608 (1995); *Harrison v. John F. Pilli & Sons, Inc.*, 321 Md. 336, 341, 582 A.2d 1231, 1234 (1990).

16. A court has authority to provide the following remedies under Maryland law:

>    (i) *enjoining the respondent from engaging in the discriminatory act*;
>    (ii) ordering appropriate affirmative relief, including the reinstatement or hiring of employees, with or without back pay;
>    (iii) awarding compensatory damages; or
>    (iv) *ordering any other equitable relief* that the administrative law judge [or circuit court judge] considers appropriate.

Md. Code Ann., State Government § 20-1009 (emphasis added)(remedies available in administrative action are available in a civil action as incorporated by Md. Code Ann., State Government § 20-1013).

17. 42 U.S.C. §1983 provides that injunctive relief may be obtained.

## CLASS ACTION ALLEGATIONS

18. Plaintiff seek to maintain this action as a class action under Rule 23(a), Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure ("FRCP").

19. This is a proceeding for a declaratory judgment as to Plaintiff and Class members' rights and for a permanent injunction, restraining Defendant from discrimination against Plaintiff, Class members and all others similarly situated because of race and color and from retaliating against Plaintiffs, Class members and all others similarly situated because of their opposition

to unlawful employment practices or participation in proceedings arising under 42 U.S.C. §
2000e and under 42 U.S.C. § 1981.

20. The Complaint also seeks restitution to Plaintiffs and Class members of all rights, privileges,
benefits, and income that would have been received by Plaintiff and Class members but for
the Defendant's unlawful and discriminatory practices. Further, Plaintiff and Class members
seek compensatory and punitive damages for their suffering as a consequence of the wrongs
alleged herein. Plaintiff avers that the defendant acted to deny Plaintiff and Class members
their rights under the laws of the United States of America and such action was designed to
intentionally discriminate against Plaintiffs who are members of a protected class, "non-
white" employees.

21. As a proximate result of the illegal actions alleged above, Plaintiff and Class members have
been damaged in that they not received the wages and compensation due them, and have
been caused to suffer great humiliation and mental anguish from then until now.

22. Plaintiff's class action is based upon violations of the following laws:

    a.  Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. § 2000e-5(f)(l) and (3), and (g) (referred to as "Title VII");

    b.  Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a (additional
compensatory and punitive damages for unlawful intentional discrimination;

    c.  Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794;

    d.  The Fourteenth Amendment to the United States Constitution pursuant to 42
U.S.C. §1983;

    e.  Maryland's laws prohibiting discrimination in employment, Md. Code Ann., State
Government § 20-601, *et seq.* on the basis of race and color.

23. Although this Court shall determine the recommended class and the appropriate injunctive and equitable relief, Plaintiffs suggest the following classes.

24. The recommended applicable classes shall be all persons employed by Defendant since November 14, 2011 who are:

    a.   "Non-white" hourly employees.

25. The Class Members are so numerous that joinder of all members in this lawsuit is impracticable. Although the precise number of Class members is unknown to Plaintiff at this time, it can be ascertained through appropriate discovery.

26. Given the above policies and practices, and since Defendant has more than one hundred employees, such policies and practices will continue to affect numerous employees of Defendant if injunctive relief is not granted.  The members of this Class are so numerous that joinder of all members is impracticable.

27. There are numerous questions of law and fact common to the class, including without limitation, the following:

    a.   Whether the unlawful employment policies and practices set forth in this Complaint took place as alleged;

    b.   Whether such employment practices constitute unlawful discriminatory practices and retaliation in violation of federal and state laws;

    c.   And whether Plaintiff and Class Members are entitled to relief as requested in this Complaint.

28. Plaintiff s claims are typical of the members of the Class. He—like all other members of the Class—has been employed by the Defendant and has been discriminated against by the Defendant in substantially similar ways.

29. Plaintiff is an adequate representative of the Class because Plaintiff and Class Members are or were subject to, and damaged by, the same unlawful company-wide policies as described in this Complaint. Plaintiff and Class Members each challenge the legality of the policies and practices as described in this complaint. Thus, by advancing his own claims, Plaintiff will necessarily advance the claims of Class Members. Plaintiff does not have any interest in conflict with the interests of other members of the Class and is willing to serve in this representative role. Plaintiff has obtained knowledgeable counsel with experience in employment litigation, discrimination, employment class action suits and other complex litigation matters who will adequately represent the Class.

30. Plaintiff is an adequate representative of this Subclass because he requests relief to the full extent available by this Court, namely that such unlawful employment practices cease, that Defendant employer be required to provide limited discovery regarding implementation of its policy and resultant effect on the Subclass, and for reinstatement and other appropriate equitable relief.

31. This action may be maintained as a class action pursuant to Rule 23(b)(2) because the Defendant's violations of the Title VII and Maryland state law are applicable to all members of the Class. Therefore, an injunction requiring compliance with Title VII and Maryland state law is necessary and the primary relief sought is injunctive and otherwise equitable in nature.

32. Because Plaintiff and the Class Members suffered the same harms and challenge the same unlawful employment policies and practices described in this Complaint, a class action is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously and efficiently, without the

8

duplication of effort and expense and the risk of inconsistent or varying adjudications presented by numerous individuals.  FRCP 23(b)(3).

33. No difficulties are likely to be encountered in the management of this class action, and the identity of the Class should be readily available from Defendant's records.

**COUNT I**
**VIOLATION OF TITLE VII: DISCRIMINATION BASED ON RACE AND COLOR**
**(42 U.S.C. § § 2000e *et seq.*)**

34. Plaintiffs and similarly situated employees incorporate by reference all preceding paragraphs and those paragraphs contained herein below as though fully set forth herein.

35. Plaintiff Brown is a male, and member of a protected class as he is "non-white."  His "race" is African-American and his "color" is "black."

36. Brawner employs more than one hundred workers.

37. All foremen with the exception of one are "white."

38. During the course of his employment, Plaintiff suffered a number of adverse employment actions eventually culminating in his termination.

39. Other "white" employees were given favor and were otherwise not discriminated against as were the "non-white" employees.

40. "Non-white" employees were not given training, advancement and increased wage opportunities while white employees, even those less qualified and/or capable, were given such opportunities.

41. Mr. Brown was denied the training and opportunities for advancement and increases in wages and hours as a result of his being non-white, and such discriminatory employment practices were then used to retaliate against him.

42. Plaintiff Brown was initially hired on or about April 10, 2010.

43. Plaintiff Brown was initially hired as a Concrete Finisher.  He also served as a truck driver.

44. Plaintiff Brown's location of employment was the Chesapeake Bay Bridge.

45. White employees who were hired after Mr. Brown were hired with no skill set, some of whom were trained by Mr. Brown, but were then advanced in front of him and given increased hours and jobs with large wage increases.

46. For example, Matthew (a white employee) was hired from Walmart with no skill set, training, experience or knowledge in any "skill set" or job he would be assigned to at Brawner.

47. Mr. Brown was assigned to train Matthew and provide him with "skill sets" and experience.

48. One desirable job was the operation of the snooper truck, a bucket that lowers under the Bay Bridge.  This was desirable because of its huge pay increase and additional hours worked.

49. The skill set "operating specialized pieces of equipment" refers to an operator of the snooper truck.  The employer had a training class for snooper training and to provide this "skill set".

50. Mr. Brown specifically requested that he be able to attend and receive this snooper training. Mr. Brown requested this because he had been repeatedly assigned to the snooper, wanted it for his own safety, and wanted it because it pays substantially more, double or more the pay.

51. Instead, Matthew, the white Walmart employee, was provided snooper training, given this position and its huge increase in pay and additional work.

52. Matthew was assigned to work 60 hours per week while Plaintiff  Brown was assigned 10-12 hours per week.

53. Not only did Matthew have no experience, he proved to be so incompetent on the job that he violated simple and routine safety precautions and caused an serious on-the-job injury to Mr.

Brown, resulting in an emergency evacuation by ambulance to the hospital, and forcing Mr. Brown out-of-work.

54. Mr. Brown's work performance was excellent, and he was even specifically requested by a state inspector.

55. Mr. Brown, who trained other employees, constantly asked for additional training, including in addition steel work, and other aspects in this and other areas, and constantly asked for more work.

56. Steel work paid approximately forty dollars ($40.00) per hour.

57. None of the non-white employees were selected for additional training or for promotion.

58. Brawner refused to provide certifications to "non-white" employees to avoid paying them higher rates of pay.

59. Instead, those selected for training and promotion included a) white male, likely "Nick", was made a foreman, and was sent to school. "Nick's" experience consisted of working at a Laundromat, but he had an Uncle who was a foreman; b) two white employees in their 60s were selected for snooper training despite the fact that they could not operate the snooper and only drove the snooper truck.

60. Additionally, not only did the company fail to provide Mr. Brown and non-white employees with opportunities it provided to white employees, it would use such reduced opportunities to further crush the wage and job prospects of such non-white employees, and to even justify its discriminatory and retaliatory conduct.

61. Defendant admits that "All employees at Brawner Builders, Inc. are hired and paid based on their particular skills."  The number of hours offered to employees is strictly based upon the type of work that is available and what skill sets are required to complete the work."

62. As a result of the training he received, white Matthew was given more hours and Defendant therefore asserts, he was "skilled at operating specialized pieces of equipment known as underbridge inspection units, which made more hours available to him."

63. In contrast, even though Plaintiff Brown had was a regular trainer of new employees, he "frequently worked less than 40 hours per week."  This despite the fact that he had informed his supervisor "Just tell me when you need me night or day."

64. Additionally, the company would assign Plaintiff Brown to work for a subcontractor such Mace Electric or another subcontractor, and refused to pay him his regular hourly salary, reducing it by four or more dollars ($4.00) per hour.

65. Only non-white employees were assigned to Mace Electric or another subcontractor and had their pay reduced and/or unlawfully withheld.

66. Plaintiff also suffered to work in a hostile work environment.

67. Discriminatory jokes and attitudes were always present, and were always directed at non-white employees.

68. Firings, infractions and disciplinary actions demonstrate the hostile work environment and discriminatory policies and practices.

69. Browner regularly fired non-white employees for almost anything, but kept on white employees who committed serious infractions.

70. For example, African American "Henry" worked for the company for ten years, failed one drug test, and was terminated using the same practices as the company would with Mr. Brown.  In contrast, a white employee failed serious multiple drug tests, and it was so severe that the company wanted him to attend detox and assist him, without firing him.

71. Non-white employees are terminated at double or more the rate of white employees.

72. As another example, it was white Matthew who, through his incompetence and negligence, injured Mr. Brown and caused him to go to the hospital.  Following this incident, Matthew was not disciplined, and in fact continued training and received a significant promotion with a significant increase in pay.

73. As another example, Joe, during snooper training, crashed the snooper, demonstrated his incompetence and serious concerns about safety, and yet was not disciplined and continued his work on the snooper.

74. Said employment policies, to non-white employees, were threatening and the employees knew they were always on the verge of losing their job.

75. The company further reinforced its discriminatory policies by unlawfully forbidding employees from discussing wages and working conditions.

76. Mr. Brown was the only employee at a large company meeting to request a pay raise, which the employer viewed as a violation of its policy.

77. The discipline for such violations was severe, and meant to send a warning to that employee and all employees.

78. Plaintiff's supervisor then would interfere with and cause problems for the Plaintiff, including assigning Mr. Brown work for which he was not compensated and causing Mr. Brown costs for which he was not reimbursed.

79. Plaintiff Brown's work hours were severely reduced, drastically reducing his pay.

80. Plaintiff Brown repeatedly asked his supervisor why his work hours were reduced.  The supervisor's response was to falsely state that he had no work for him.

81. Plaintiff Brown then asked his supervisor whether his work hours were reduced because he was black. On that day, Mr. Brown was assigned to work on a permanent basis in Ocean City, Maryland.

82. For Mr. Brown's permanent assignment in Ocean City, Maryland and required that he do so in his own vehicle, paying for costs himself.  Mr. Brown asked questions about transportation, driving and lodging with respect to the Ocean City assignment, and whether he would be compensated for traveling seven hours round trip.

83. On two days, Plaintiff Brown requested answers and stated an inability to regularly travel to the Ocean City assignment, and that he had not been informed that he would be compensated for the costs and hours worked.

84. Plaintiff's supervisor sent Plaintiff the message: "I just told you where you are working 5 f___ing times!!! Dist 1 with Ernie Rowe!!!!! Report to him there or you are not f___ing working anywhere!!!! I tried calling you but no answer, so stop wasting my f___ing time!!! Go to dist 1 or you will be terminated!!!"

85. The Plaintiff's supervisor then told him not to come into work on Monday, February 18, 2014.  The Plaintiff's supervisor stated that the company would contact Brown and let him know what they were going to do.

86. On February 18, 2014, the Plaintiff's supervisor called the Plaintiff and informed him that he was "terminated."

87. As a direct and proximate result of the Defendant's policies and practices, Plaintiff and Class members were unlawfully discriminated against with regard to the employee's compensation and other terms, conditions, and privileges of employment.

88. Defendant is therefore liable to Plaintiffs and Class members for harms suffered as a result of Defendant's discriminatory employment policies, practices and procedures.

89. Pursuant to the remedies, procedures, and rights set forth in Title VII, Plaintiff prays for judgment as set forth below.

**COUNT II**
**VIOLATION OF MD. CODE ANN., STATE GOVERNMENT § 20-602 - UNLAWFUL DISCRIMINATION IN EMPLOYMENT BASED ON RACE AND COLOR**

90.     Plaintiff incorporates by reference all preceding paragraphs and those paragraphs contained herein below as though fully set forth herein.

91.     Defendant is an employer as defined by Md. Code Ann., State Government § 20-601(d).

92.     Plaintiff is or was an employee of Defendant as defined by Md. Code Ann., State Government § 20-601(c).

93.     Defendant operates business establishments within the jurisdiction of the State of Maryland and, as such, is obligated to comply with the provisions of Maryland's laws prohibiting discrimination in employment, Md. Code Ann., State Government § 20-601, *et seq*.

94.     As described in this complaint, Defendant has discriminated against the Plaintiff on the basis of race and/or color by:

    a.   Discharging the Plaintiff and similarly situated employees. Md. Code Ann., State Government § 20-606(a)(1);

    b.   Otherwise discriminating against the Plaintiff and similarly situated employees with respect to the individual's compensation, terms, conditions, and privileges of employment. Md. Code Ann., State Government § 20-606(a)(1);

    c.   Limiting, segregating, and/or classifying Plaintiff, including similarly situated employees or applicants for employment in other fields and skill areas that in any

way deprived or tended to deprive any individual of employment opportunities or

otherwise adversely affected the individual's status as an employee. Md. Code

Ann., State Government § 20-606(a)(2);

d.   Discriminating against Plaintiff and similarly situated employees for admission to,

or employment in, any program established to provide apprenticeship or other

training or retraining. Md. Code Ann., State Government § 20-606(d);

e.   Adopting and subjecting Plaintiff and similarly situated employees to

discriminatory compensation decisions and other practices, and applying

discriminatory compensation decisions or other practices, resulting wholly or

partly from the discriminatory compensation decision or other practice.  Md.

Code Ann., State Government § 20-607.

95.     Defendant's policies and practices discriminated against Plaintiff and similarly situated

employees because its actions affected their compensation, terms, conditions, and/or privileges

of employment.

96.     Defendants' failures described in this Complaint and its policies and practices constitute

unlawful discrimination and resulted in adverse employment actions in violation of Md. Code

Ann., State Government § 20-609.

97.     The Defendant's unlawful employment practices as described herein and implemented by

Defendants, its executives, employees and agents, were done with malice.

98.     Defendant's discriminatory conduct exhibited a willful and/or reckless indifference to

Plaintiff's protected right to be free from disability discrimination in the workplace.

99.     Defendant's conduct constitutes ongoing and continuous unlawful employment

discrimination under Maryland law and, unless restrained and enjoined from doing so, Defendant

16

will continue to discriminate and deprive Plaintiff of the terms, conditions and privileges of employment and deprive her of equal employment opportunities in violation of Maryland law. Defendant's acts and omissions, unless enjoined, will continue to inflict irreparable injuries for which Plaintiff has no adequate remedy at law.

100.    This Court has authority under the Maryland state statutes to provide the following remedies:

> (i) enjoining the respondent from engaging in the discriminatory act;
> (ii) ordering appropriate affirmative relief, including the reinstatement or hiring of employees, with or without back pay;
> (iii) awarding compensatory damages; or
> (iv) ordering any other equitable relief that the administrative law judge [or circuit court judge] considers appropriate.

Md. Code Ann., State Government § 20-1009 (emphasis added)(remedies available in administrative action are available in a civil action as incorporated by Md. Code Ann., State Government § 20-1013).

101.    Pursuant to the remedies, procedures, and rights set forth in the Maryland Discrimination in Employment article, Plaintiff prays for judgment as set forth below.

## COUNT III
## UNLAWFUL RETALIATION PROHIBITED UNDER STATE AND FEDERAL ANTI-DISCRIMINATION LAWS

102.    Plaintiff incorporates by reference all preceding paragraphs and those paragraphs contained herein below as though fully set forth herein.

103.    The acts and omissions by the Defendant constitute adverse employment actions against the Plaintiff.

104.    The adverse employment actions were caused by the Plaintiff's engagement in the protected activities, by the Plaintiff's assertions of his lawful rights, and by the Defendant's desire to retaliate and/or continue its unlawful discriminatory policies and practices.

17

105.    Defendant's conduct constitutes ongoing and continuous unlawful retaliation under:

    a.    Title VII, 42 U.S.C. § 2000e-3;

    b.    Md. Code Ann., State Government § 20-606(f).

106.    As the direct and proximate result of Defendant's unlawful conduct, Plaintiff has and will continue to suffer damages, including, but not limited to: lost earnings past and future, lost earning capacity, emotional pain, suffering, mental anguish, and other pecuniary and nonpecuniary losses.

107.    Defendant's conduct was intentional, malicious, and recklessly indifferent to Plaintiff and similarly situated employee's protected rights.

108.    Pursuant to the remedies, procedures, and rights set forth in the statutes and public policy banning retaliation, Plaintiff prays for judgment as set forth below.

**<u>COUNT IV</u>**
**<u>DENIAL OF PROCEDURAL DUE PROCESS UNDER THE MARYLAND DECLARATION OF RIGHTS</u>**

109.    Plaintiff incorporates by reference all preceding paragraphs and those paragraphs contained herein below as though fully set forth herein.

110.    Plaintiffs have a constitutionally protected property interest in continued employment.

111.    A person with a property interest in continued employment is entitled to a limited hearing prior to termination and a more comprehensive hearing after termination.

112.    These constitutionally protected interests may not be terminated without procedural due process. The fundamental requirements of due process include:

    a.    full, complete and timely compliance with all standards, procedures and policies as implemented and/or applied by the Defendants to other employees;

b.  full, complete, timely and fair compliance employment practices under Md. Code

Ann., State Government § 20-601, *et seq.* and applicable federal laws;

c.  the opportunity to be heard at a meaningful time and in a meaningful manner;

d.  a hearing conducted by an impartial tribunal;

e.  a full and fair opportunity to be heard on all pertinent issues prior to a final

determination regarding termination of employment; and

f.  a full and fair opportunity to be heard on all pertinent issues after a final

determination regarding termination of employment.

113.    The above actions and/or omissions by the Defendants among other things denied

Plaintiff procedural due process.

114.    Based upon the foregoing allegations, Defendants have violated Plaintiffs' procedural

due process rights as a matter of fact and law.

115.    Pursuant to the rights set forth in the Maryland Declaration of Rights, Plaintiff prays for

judgment as set forth below.

## COUNT V
## DENIAL OF SUBSTANTIVE DUE PROCESS UNDER THE MARYLAND DECLARATION OF RIGHTS

116.    Plaintiff incorporates by reference all preceding paragraphs and those paragraphs

contained herein below as though fully set forth herein.

117.    Plaintiff's federal and state constitutional and statutory rights to non-discrimination are so

fundamental as to require substantive due process protections.  Discrimination and

termination based upon illegal discrimination violate a liberty interest.

118.    Defendant accused Plaintiff of gross misconduct in connection with his employment to

harm him in his employment and his attempts to receive unemployment compensation.

19

119.    Defendant's acts to terminate Plaintiffs and its acts to malign their character, work habits, and actions and impugn their reputation were for the purpose of preventing Plaintiffs from obtaining and from seeking employment, for purposes of denying unemployment, and for retaliation.  Defendant's acts violate Plaintiff's liberty interests.

120.    The above liberty interests are protected by the Maryland Constitution's Maryland Declaration of Rights (Article 24).

121.    These protected interests may not be terminated without substantive due process. The protection of substantive due process includes the right to be free from deprivation of protected liberty and/or property interests through arbitrary and capricious state action.

122.    Substantive due process places a restraint on Defendants' power and conduct beyond that imposed by procedural due process.

123.    Substantive due process provides heightened protection against Defendants' interference with certain fundamental rights and liberty interests.

124.    Defendants cannot arbitrarily deprive an individual of a constitutionally protected interest even if they follow the proper procedures.

125.    The above interests require particularly careful scrutiny of the state needs asserted to justify their abridgment.

126.    Defendants have violated Plaintiff's substantive due process rights as a matter of fact and law.

127.    Pursuant to the rights set forth in the Maryland Declaration of Rights, Plaintiff prays for judgment as set forth below.

**COUNT VI**
**DENIAL OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE**
**U.S. CONSTITUTION PURSUANT TO 42 U.S.C. § 1983**

128.   Plaintiff incorporates by reference all preceding paragraphs and those paragraphs
contained herein below as though fully set forth herein.

129.   All the preceding procedural and substantive rights that were violated by the Defendants
were clearly established at the time that due process was denied and termination was
threatened, initiated, attempted and/or completed.

130.   Based upon the foregoing allegations, Defendant has violated Plaintiffs' due process
rights as a matter of fact and law.

131.   Plaintiff is therefore entitled, pursuant to 42 U.S.C. § 1983, to bring suit for equitable
remedies and to obtain redress for Defendants' violations of Plaintiff's rights.

132.   Pursuant to the rights set forth in the U.S. Constitution, 42 U.S.C. § 1983, Plaintiff prays
for judgment as set forth below.

**COUNT VII**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT ("FLSA"), 29 U.S.C. §§201, et**
**seq.**

133.   Plaintiff incorporates by reference all preceding paragraphs and those paragraphs
contained herein below as though fully set forth herein.

134.   Plaintiff and the similarly situated employees were paid on an hourly basis and therefore
were not exempt employees under the FLSA. 29 C.F.R. § 541.100(a)(1).

135.   Jack Murphy, an owner and/or a top manager of Brawner, sets forth the company motto,
"keep 'em hungry, and they'll stay at the table."

136.    The knowledge within the company if you complain or even talk about money, there will be someone to replace you.

137.    The company had three meetings to inform employees that any complaints they would make about pay, including problems with payment or differences between employee's pay, they would be fired.

138.    Unlawful policies and practices of the firm were designed to cause Plaintiff and similarly situated employees to not be paid for work.

139.    First type of unlawful policy and practice: Brawner assigned Brown and other similarly situated employees to work for Subcontractors, including Mace Electric.

140.    The "assignment" was intended to pay Brown and other class members below their regular hourly rate.

141.    The Plaintiff and similar situated employees' work, when assigned to the subcontractor, is substantially the same as the work duties of the employees.

142.    Second type of unlawful policy and practice: Employees were also regularly requested to work hours for the company for which they were not compensated.

143.    For example, when the employee had an assigned job site, the employee in the morning would be given an additional assignment by the employer, such as to pick up a company truck at a distant location, and to drop it off at the same location at the end of the day.

144.    The employer must compensate the employee for all time from the beginning of the workday, which is the time the employee is at or near his regular job site or when he is instructed of the new assignment by the supervisor.

145.    Third type of unlawful policy and practice:  Brawner refuses to begin and end the workday from the time the employee picks up the company truck and returns it to the

22

assigned truck yard.  For example, for an assignment involving an inspection of bridges by the state, the employees are told to pick up a company truck at an assigned truck yard location.  Some workdays would exceed eight hours, yet the company only paid for eight hours of work.

146.    Brawner also retaliated when an employee complained about the above pay policies.  The employee had come from a company that had properly complied with the federal and state wage laws before becoming employed by Brawner, and thus the employee was aware that Brawner was not complying with the law.  When the employee complained, the employee was fired.

147.    Defendant violated the FLSA by failing to pay the Plaintiff and similarly situated employees their full and due wages within the applicable and required time periods worked.

148.    Defendant's violations of the FLSA were repeated, willful, and intentional.

149.    Defendant is liable to Plaintiff and Class Members under 29 U.S.C. §§207(a) and 216(b) of the FLSA, for, inter alia, unpaid standard and overtime compensation, liquidated damages, and costs and reasonable attorneys' fees incurred in the maintenance of this action.

**COUNT VIII**
**VIOLATION OF MARYLAND LAW, THE MARYLAND WAGE AND HOUR LAW ("MWHL"), MD. CODE ANN., LAB. & EMPL. §§3-401, et seq. AND MARYLAND WAGE PAYMENT AND COLLECTION LAW ("MWPCL"), MD. CODE ANN., LAB. & EMPL. §§3-501, et seq.**

150.    Plaintiff incorporates by reference all preceding paragraphs and those paragraphs contained herein below as though fully set forth herein.

151.    Defendants violated Maryland law by failing to maintain records of Plaintiffs and Class Members' actual hours worked and wage rates for each day and work week as required and set forth in Md. Code Ann., Labor & Empl. §3-424(2) and (4).

152.    Defendant violated Maryland law by failing to pay Plaintiff and Class Members their entire wages due for all hours worked in each work week within the applicable two week period as set forth in §3-502(a)(1)(ii) and §3-507.1.

153.    Defendant's failure to properly pay Plaintiff and Class Members was done willfully and was not the result of any bona fide dispute.

154.    Defendant is liable to Plaintiffs and Class Members for unpaid wages, treble damages, court and other costs, and reasonable attorneys' fees and expenses as set forth under Md. Code Ann., Labor & Empl. §3-427(d) and 3-507.1.

## COUNT IX: RETALIATION PROHIBITED BY THE FLSA

155.    Plaintiff incorporates by reference all preceding paragraphs and those paragraphs contained herein below as though fully set forth herein.

156.    The Defendant's actions constitute unlawful retaliation.

157.    The Defendant's retaliatory actions are willful and criminal, and subject the Defendant upon conviction to a fine up to $10,000.00 and imprisonment for up to six months. 29 U.S.C. § 216(a).

158.    The FLSA requires adequate compensation sufficient to ensure that employees are not compelled to risk their jobs in order to assert their wage and hour rights under the Act.

159.    The Defendant is liable to Plaintiff for such legal or equitable relief as may be appropriate to effectuate the purposes of the FLSA. 29 U.S.C. § 216(b).

## COUNT X: RETALIATION PROHIBITED BY MARYLAND WAGE LAW

160.    Plaintiff incorporates by reference all preceding paragraphs and those paragraphs contained herein below as though fully set forth herein.

161.    The Defendant withheld wages, compensation, and benefits in violation of Maryland law. Maryland Code Annotated, Labor & Employment § 3-501(c).

162.    The preceding retaliatory actions by the Defendant constitutes a change to the terms or conditions of Plaintiff's employment for the purpose of and having the effective of dissuading other reasonable employees from joining the instant action, from assisting the Plaintiffs, and from participating or testifying in the instant action. Maryland Code Annotated, Labor & Employment § 3-428(b)(2)(iv).

163.    The Defendant's willful violations in refusing to pay wages, compensation and benefits for purposes of retaliation constitutes a criminal act.   Maryland Code Annotated, Labor & Employment § 3-508(c)(1).

164.    Plaintiff is entitled to be awarded treble damages, reasonable counsel fees and other costs.  Maryland Code Annotated, Labor & Employment § 3-507.2.

## EQUITABLE TOLLING AND EQUITABLE ESTOPPEL

165.    Plaintiff incorporates by reference all preceding paragraphs and those paragraphs contained herein below as though fully set forth herein.

166.    Defendant failed to comply with the FLSA and Maryland law by failing to post notices advising their employees of their right to overtime pay "in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy." 29 C.F.R. § 516.4; Md. Code Ann., Labor & Empl. §3-423(b).

167.    Due to this lack of statutorily required notice, any statute of limitations applicable to Plaintiff and Class Members' FLSA and Maryland law claims should be equitably tolled for the period that Defendants were in violation of their positing obligations.

168.    Due to Defendants' wrongful conduct in ensuring that their contracting and operating

entities and all associated employees would not assert any unpaid wage or overtime claims, and their unlawful policies and practices, the Plaintiff and Class Members' FLSA and Maryland law claims should be equitably tolled for the period of Defendants' misconduct.

169.    For all the foregoing reasons, Defendant should be equitably estopped from raising the statute of limitations as a defense to these claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, Class members and all others similarly situated, respectfully requests that this Court:

A. Assume jurisdiction over this action and maintain continuing jurisdiction until Defendant is in full compliance with every order of this Court.

B. Certify this action as a Class Action and appoint the individually named Plaintiff as Class representative.

C. Issue a declaratory judgment that the acts and practices of Defendant complained of herein violated and continue to violate the rights of Plaintiff and members of the proposed Class under the statutes set forth herein.

D. Issue a preliminary and permanent injunction ordering the Defendant to comply with the statutes set forth herein.

E. Issue a preliminary order requiring Defendant to reinstate any Plaintiff and/or class member to his or her former position, with all accumulated back pay, salary rights and benefits.

F. Award actual, compensatory, and/or statutory damages to Plaintiff and members of the proposed Classes for violations of their rights under federal and state law.

G. Award punitive damages.

H.  Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. §216(b), and direct Defendant to provide to Plaintiff and Class members a list of all persons employed by them as hourly employees during misconduct period, including the last known address and telephone number of each such person, so that Plaintiff can give such persons a Notice of this action approved by the Court and an opportunity to make an informed decision about whether to participate in it;

I.  Require pre-Notice discovery into the Defendants' misconduct, failures to post the required notice and other related actions and omissions that would assist is determining the class period for purposes of conditional class certification.

J.  Require that Notice of this action be provided to all employees, to all contracting and operating entities and that it be posted in a conspicuous place;

K.  Determine the damages sustained by the Plaintiff and the Class members as a result of Defendant's willful and intentional violations of 29 U.S.C. §207(a), and award such back pay and unpaid wages against Defendant in favor of Plaintiffs and all members of the Class, plus an additional equal amount as liquidated damages pursuant to 29 U.S.C. §216(b), plus such pre-judgment interest as may be allowed by law;

L.  Determine the damages sustained by Plaintiff and Class members as a result of Defendant's willful and intentional violations Maryland law and/or breaches of contract, and award all appropriate damages resulting therefrom to Plaintiffs and the members of the Class, including treble damages;

M.  Award Plaintiff(s) who have suffered retaliation and/or an adverse employment action as a result of participating in the lawsuit or providing testimony adequate compensation sufficient to effectuate the purposes of the FLSA and Maryland wage laws.

N.  Award Plaintiff and the members of the Class their costs and disbursements of this suit, including, without limitation, reasonable attorneys' fees, accountants' fees, investigators' fees, experts' fees, and other associated fees and costs; and

O.  Grant Plaintiffs and the members of the Class such other and further relief as this Court may deem just, proper and equitable.

P.  Schedule a trial by jury to resolve all disputed factual issues.

**PLAINTIFF AND CLASS MEMBERS DEMAND A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE**.

Respectfully submitted,

CONWELL LAW LLC

_/s/_____
Scott A. Conwell (Bar No. 15008)
    scott@conwellusa.com

2411 Crofton Lane, Suite 2A
Crofton, Maryland 21114
TELE: (410) 451-2707
FAX: (410) 451-2706

*Counsel for Plaintiff*